George F. X. McInerney, J.
This is a motion to inspect the minutes of a Grand Jury inquiry, pursuant to section 952-t of the Code of Criminal Procedure.
Petitioner relates that until recently he was an Assistant District Attorney of Suffolk County and that the incumbent District Attorney stated he would not be a candidate for re-election this November; that petitioner and others in the District Attorney’s office became announced candidates for the *976 nomination by the Republican party; that he asserts it became apparent to him that certain powerful political leaders were supporting the candidacy of a Babylon lawyer who was not a member of the District Attorney’s staff (although he had been at one time); that he was later informed that this lawyer would not be the Republican candidate; that four days before the county convention of the Republican committeemen there was a meeting of the committeemen of the Town of Babylon at which the said Babylon lawyer withdrew and the Town of Babylon then proposed Mr. Aspland as its candidate; that in the parlance of politics Mr. Aspland was a dark horse since he had not publicly announced his interest, if any, in the nomination prior to this date; that four days later Mr. Aspland received the support of all 10 towns of Suffolk County and was nominated as the Republican candidate for District Attorney, subject of course to any possible primary contests; that four days later petitioner (who had not publicly announced his interest in securing the Democratic nomination) was nominated by the Democratic party, also subject of course to possible primary contests; that at the nominating convention petitioner asserted that persons with underworld contacts influenced some members of the Suffolk County Republican committee in the selection of their ultimate nominee; that the next day petitioner was informed by the District Attorney that the July Grand Jury would, at his request, investigate petitioner’s charges, although petitioner maintained (and maintains) that such action without more is not a crime; that petitioner requested his superior to make available to him four investigators of his own choosing to develop the information known to him, and present it to the District Attorney in September; that this requested delay was not granted; that petitioner characterized the Grand Jury probe as a trap designed to limit a thorough investigation (petitioner does not show how it would limit it); that petitioner and many others appeared before the Grand Jury starting on the 7th of July; that petitioner states one John Del Mastro had been “ furious ” because the Town of Huntington Republican vice-chairman was supporting petitioner in preference to the first Babylon lawyer; that the said John Del Mastro had been the subject of numerous articles in a daily newspaper for some years; that these articles linked “ him to known members of the organized underworld Syndicate ’ ’ and he ‘6 had refused to sign a waiver of immunity to testify before a grand jury ’ ’ (a right guaranteed him by the Constitution of the State of New York as well as the Constitution of the United States of America); that the Grand Jury did not return an indictment as *977 a result of its hearings; that some of the witnesses made statements concerning their testimony about Mr. Del Mastro’s activities (what they said is not stated by petitioner); that this, in petitioner’s opinion, supports his allegation which caused the probe; that the Republican candidate, Mr. Aspland, joins in with this petitioner; that this issue has become paramount in the current political campaign in Suffolk County and that consequently petitioner and the public have an interest in reading the minutes even though there was no indictment and the petitioner makes no charge of crime.
The function of the Grand Jury is an extremely important one and is well stated by our Court of Appeals in People v. Minet (296 N. Y. 315, 323): “ There is still a further danger to the true administration of justice in the practice here attempted. In Matter of Opinion of Justices (232 Mass. 601, 603) it was said: ‘ The law of the land ’ implies an indictment or presentment by the grand jury in instances to which that proceeding is necessary.
“ < grand jury is an ancient institution. It has always been venerated and highly prized in this country. It has been regarded as the shield of innocence against the plottings of private malice, as the defense of the weak against the oppression of political power, and as the guard of the liberties of the people against the encroachments of unfounded accusations from any source. These blessings accrue from the grand jury because its proceedings are secret and uninfluenced by the presence of those not officially and necessarily connected with it. It has been the practice for more than two hundred years for its investigations to be in private, except that the district attorney and his assistant are present.
“ ‘ Secrecy is the vital requisite of grand jury procedure.’ ”
These principles have been examined and declared both by statute and the courts and are summarized in Matter of Bar Assn. of Erie County (Hagerty) (182 Misc. 529, 533) :
“At the outset, several well-established propositions of law are apparent:
‘ ‘ 1. The court to which a grand jury is returned has jurisdiction, both by statute (Code Crim. Pro., § 952-t) and by the judicial interpretation thereof, to permit an inspection of the minutes of the grand jury returned to that court.
‘ ‘ 2. An indicted defendant may, in the discretion of the court, be granted an order to inspect the minutes of the grand jury upon a proper application and for the purpose of moving to dismiss the indictment.
*978 “ 3. Other persons, in the discretion of the court, may inspect the minutes of the grand jury when the purpose of the inspection is to facilitate and make efficient the administration of justice.
“4. So far as the reported cases in this State are concerned, those ‘ other persons ’ have been duly elected or appointed law-enforcement bodies or officers. For example, the Attorney-General of the United States, Commissioner Samuel Seabury, appointed by the Governor of the State of New York, and the Commissioner of Police of New York City. (Matter of Crain, 139 Misc. 799; Matter of Attorney-General of United States, 160 Misc. 533, and the collected cases therein.)
“ 5. The objection of the District Attorney to such an order may be persuasive, but it is not conclusive upon the court. (Matter of Martin, 170 Misc. 919.)
‘ ‘ The above five principles being the law of this State as this court understands it, then this petitioner must claim that it is either a duly organized and existing law-enforcing agency or that it has been endowed with powers similar thereto, or that if not such a body or person and not thusly endowed, then the petitioner urges the court in its sound discretion to establish a precedent and by granting this motion make the minutes of this Grand Jury available for the inspection of the petitioner — a membership corporation
Admittedly, then, this court has the discretion to permit an inspection of the testimony of the witnesses before this Grand Jury, provided this be found to be a proper case for the exercise of such discretion. The petitioner, not unexpectedly, asserts that this is such a case, although he states that his application is unique.
It must be borne in mind that even when a person is accused by the Grand Jury of having committed a crime, he has no right to examine the testimony of the witnesses which he is called to answer upon penalty of loss of liberty. This is so even after he has been arrested, arraigned and the Grand Jury discharged.
“No inherent right is vested in a defendant to probe the proceedings of a Grand Jury. Otherwise, inspection would be open to every defendant ‘ for the asking ’ (People v. O’Keefe, 198 Misc. 682; Matter of Montgomery, 126 App. Div. 72, 82) resulting in considerable chaos in the administration of the criminal law. Hence, the granting of motions of this nature must be lodged in the sound discretion of the court, which, while not arbitrarily withheld, should be exercised only upon proper cause shown. (People v. Moody, 133 N. Y. S. 2d 332; *979 People v. Brown, 272 App. Div. 972; Matter of Martin, 170 Misc. 919, 922.) ” (People v. Banks, 27 Misc 2d 557, 558.)
Needless to say, any defendant would greatly appreciate the opportunity to study the evidence against him before being tried, and counsel often move for permission to inspect the minutes of the Grand Jury testimony on the alleged ground that the evidence was insufficient to support the indictment and this can only be shown by an examination of the minutes. The court itself, in proper case, reads the minutes and then either denies the motion to inspect, or grants it and dismisses the indictment. Even in the latter case the defendant does not usually read the testimony. The language of the court in People v. McCann (166 Misc. 269, 270) is pertinent: “Many counsel for defendants have lately addressed similar motions to this court in cases where the papers failed to show grounds for granting an inspection of the minutes. They content themselves with hearsay, opinions, comments and, in some instances, with arguments and speculation as to what was or was not before the grand jury; and upon the hearing of such motions they ask for an examination of the minutes by the court to determine whether the indictment has a basis in fact — practically, asking the court to pass upon a motion, although not made, to dismiss the indictment. If this practice is encouraged, then every defendant would ask for a review of the evidence before the grand jury, in order to determine the sufficiency thereof and the validity of the indictment. I referred to this subject in People v. Klinger (165 Misc. 634). The evidence before the grand jury should not be divulged except where, in the sound discretion of the court, the application is predicated on facts proven and not on mere assumption of the subject-matter. If the court is going to assume authority in all cases, regardless of the sufficiency of the moving papers, then we would be establishing a practice of inquiring into the validity of all indictments, and the multiform situations thus presented would create an endless amount of work for the prosecuting authorities and the court with much incidental delay in the disposition of criminal cases. Courts should not act in these matters unless the moving party brings himself within the law. As a general policy, the court ought not to take cognizance of these applications unless the circumstances of the case show clearly a questionable indictment either on the law or the facts, and matters of defense ought not to be determined except upon a trial.”
If then, the testimony resulting in a person’s indictment is withheld from him except upon unusual circumstances, how *980 much more unusual should the circumstances he in order to justify the release to a person who has not been indicted and who lacks any acknowledged standing to inspect? The petitioner argues that his case is unique; that the Grand Jury should not have investigated his accusations and that since no one was indicted he should now have the right to inspect the testimony to show that he was right in the first place. This fine line of differentiation might be completely incomprehensible to the next defendant who was denied inspection because he was indicted, and he might well question the logic of an argument which held that he could see the testimony when it did not matter to him but could not when it did.
The petitioner grounds his argument initially upon his bare assertion that the District Attorney should not have presented the petitioner’s charges to the Grand Jury since he did not claim a crime was committed. This contention is untenable, since it is within the sole discretion of the District Attorney to present or fail to present evidence before the Grand Jury.
‘ ‘ In any event, the District Attorney of a county, familiar with the conditions there and responsible to the People of the county, has the duty of recommending to the Grand Jury indictment for the crime or crimes which the protection of the community requires and we are not here to determine that for him.” (People v. Florio, 301 N. Y. 46, 53.)
“ The district attorney is more than a prosecuting officer. He is a quasi judicial officer. He has a broad discretion in the handling of all criminal matters in his county.” (People ex rel. Pringle v. Conway, 121 Misc. 620, 622.)
It is not up to the petitioner to instruct his superior as to what matters should be presented to the Grand Jury. Indeed the opinion of the District Attorney as to the commission of a crime does not control, for the Grand Jury returns the indictment, not the District Attorney. (Code Crim. Pro., § 245.) It is not unknown for the jury to return an indictment contrary to the private opinion .of the District Attorney.
The petitioner asserts that the public has an interest in reading the minutes on the grounds that the District Attorney presented the evidence to the jury in order to “ whitewash ” the accusations made by petitioner.
There are several difficulties with this approach. First, the petitioner is not the public, nor can he gratuitously appear for them. In our country were a citizen to have twice the zeal of a Savonarola he cannot appoint himself a prosecutor and conduct a general investigation into the affairs of the citizenry. *981 This power, so dangerous if abused, is wisely reserved to the Grand Jury.
‘ ‘ It could never have been the intention of the Legislature that any individual might, by merely alleging that a fictitious person had committed a crime, begin a general investigation into the affairs of the community; all of our criminal law proceeds upon the theory that every man is presumed innocent until the contrary is shown, and it is all administered, or intended to be administered, with a view to protecting the innocent against the designs of irresponsible and vicious persons. The grand jury is the great bulwark of the innocent; it is designed to prevent criminal proceedings in eases where there is lack of probable cause, and this is to be determined in secret by responsible men chosen from the community at large, acting upon their oath and upon sworn testimony, and it is hardly to be supposed that the Legislature has intended to open the doors to irresponsible inquisitors who merely alleged generally that fictitious persons have been guilty of crime.” (People ex rel. Sampson v. Dunning, 113 App. Div. 35, 37-38.)
In a case involving political activities the court said: “ The justice of the Supreme Court, holding a term at which a grand jury was present, held an inquisition, which he calls a John Doe proceeding, to secure evidence to send to the grand jury. No such power of inquisition is given to a magistrate. To the grand jury, and to it alone, is given the power of investigation without a definite charge. The secrecy of the grand jury prevents injury to reputations from roving investigations, and no indictment may be found except on evidence which, unexplained or uncontradicted, is sufficient to warrant a conviction by a trial jury.” (Matter of Both, 200 App. Div. 423, 426.)
Another political controversy was involved in People ex rel. Travis v. Knott (204 App. Div. 379), where the Comptroller of the State of New York was charged with payment of certain fraudulent claims. A Magistrate was given a verified information by a Deputy Assistant District Attorney and the Magistrate conducted an investigation during which the defendant declined to answer questions. He was held in contempt of court, and upon appeal the conviction was reversed, the court stating (p. 383): “ it must be borne in mind that the magistrate does not have the inquisitorial powers of the grand jury. The grand jury can investigate to discover whether a crime has been committed and what person committed it, without any formal presentation to it. It can act on rumor or suspicion. The magistrate can only act on the presentation of a sworn information stating that a person has been guilty of some designated *982 crime. The fact that the informant is a deputy assistant district attorney does not make the information an official act, nor dispense with the requirements as to definiteness of allegation.”
In citing the above case, the court in Matter of Gaffney v. Kampf (268 App. Div. 308, 311) (also a case involving political ramifications), stated: “No case has been called to our attention which supports in the slightest degree the procedure adopted here, namely, to conduct a John Doe fishing expedition to aid the police in apprehending John Doe and his fictitious associates.”
Petitioner urges that the court has discretion to allow inspection of the minutes by one other than a defendant in a proper case and that this is a proper case. He cites People ex rel. Hirschberg v. Board of Supervisors of County of Orange (251 N. Y. 156). That case involved a bitter political fight between a former District Attorney, Hirschberg, and his successor, Wilson. Hirschberg brought charges against Wilson and applied to the State Governor for his removal. A hearing was had and the charges were dismissed. Hirschberg then brought an action pursuant to section 240 of the County Law to recover his reasonable costs and expenses. A hearing was had by the Board of Supervisors to ascertain if the costs were reasonable and it became necessary for him to show his good faith and probable cause in bringing the charges. The court held that he should have been allowed to introduce the testimony of the grand jurors since the ancient reasons for the secrecy no longer existed, and justice or the rights of the public required disclosure of the facts. The court said (pp. 170-171):
“ Undoubtedly 1 The tendency of modern authorities has been to hold that when the reasons for secrecy no longer exist the ancient rules with reference thereto do not apply, and, in all cases where justice or the rights of the public require it, the facts should be disclosed. ’ (State v. Campbell, 73 Kansas, 688. See, also, decisions collated in the opinion in that ease and in notes to Wigmore on Evidence, §§ 2360-2363.)
“ Where a District Attorney is charged with official misconduct, the reasons for refusal to apply the rule of secrecy are peculiarly strong. ‘ He cannot seek shelter behind that rule of secrecy to prevent inquiry into his malfeasance or misfeasance in office. When the reason for the rule of secrecy ceases, the rule itself becomes inoperative. Any other principle would permit a dishonest, corrupt, and vicious district attorney to use the great power of his office and his influence with the grand jury as an engine of oppression and be entirely *983 safe from inquiry under a seal of secrecy which would prevent investigation. That is not the law. That would be perversion, and not enforcement of the rule.’ (Attorney-General v. Pelletier, 240 Mass. 264.)
“In New York, as in most jurisdictions, the general rule is safeguarded by statutory prohibitions. (Code Crim. Pro., §§ 265, 266, 952; Penal Law, §§ 1783 and 1784.) We are not in this case called upon to determine the circumstances under which the court may require production of the stenographer’s minutes of the grand jury proceedings. We pass only upon the competency of the jurors as witnesses to proceedings of the grand jury. ’ ’
Although this case did not allow the use of the minutes of the testimony of the Grand Jury witnesses, such minutes are allowed to defense counsel in cross-examination of a witness at the trial to search for prior inconsistent statements of that witness made to the Grand Jury. (People v. Miller, 257 N. Y. 54; People v. Walsh, 262 N. Y. 140; People v. Rosario, 9 N Y 2d 286.) But even now, a defendant on trial is not entitled to inspect the testimony of the Grand Jury witnesses who have not testified against him at the trial.
An examination of the cases interpreting the general rule of the Hirschberg case (supra) results in an acknowledgement of the accuracy of the outline already given at the start of this opinion in Matter of Bar Assn. of Erie County (Hagerty) (182 Misc. 529). In that case a Grand Jury presented to the County Court a “special report” which stated that certain City Court Judges failed to deal with certain offenders effectively, that the police had been thwarted in their efforts by the Judges in the manner of disposition of their charges and the report concluded that the situation thereby disclosed “ should be of grave concern to the Bar Association of Erie County ’ ’. A copy of the report, or presentment, was sent to the president of the Bar Association by the direction of the Grand Jury.
The Bar Association brought a motion for the inspection of the minutes alleging, as does this petitioner herein, that a public interest was involved and that the minutes should be released to it, pointing out that one of their corporate purposes was to promote reform in law and to facilitate the administration of justice.
The court held that despite the observation made by the Grand Jury that “ It seems to us that the situation which this grand jury is exploring relative to the manner in which certain cases are disposed of or handled in the City Court of Buffalo should be of grave concern to the Bar Association of Erie *984 County ’ ’, the petitioner had no standing to bring the action, stating (p. 534): “ All the foregoing leaves this court with the inescapable conclusion that the petitioner is not such a person or body as the courts of this State have heretofore permitted to examine the minutes of a grand jury.”
Certainly if a Bar Association to whose attention a Grand Jury has brought a presentment indicating their proper concern with the administration of justice is not a proper party to read the minutes, how much less proper is the petitioner herein, faced with no direction of a Grand Jury, no indictment, and representing only his own interest?
The question of standing is important because the courts have consistently held that the minutes are unavailable for private litigation. While the petitioner asserts his interest is mainly a public one, any interest in addition to that he has by being a citizen of the State of New York is certainly private. He stands on no better footing than any other citizen except as to his personal interest in what the minutes hopefully might show.
The case of Dworetzky v. Monticello Smoked Fish Co. (256 App. Div. 772, 774) which the petitioner cites, says: “From the last two cases cited it is clear that the minutes of a grand jury may be ordered to aid in the enforcement of law but not to serve any private interest or to aid any private litigant.”
This case is also cited in People ex rel. Sawpit Gymnasium (60 N. Y. S. 2d 593) as authority for the rule that inspection is permitted when the application is made by a law-enforcement agency and in the public interest, neither of which conditions are supplied by the petitioner. People v. Behan (37 Misc 2d 911) contains an excellent review of the many cases on this point, all to the conclusion that the minutes are to be made available only to a law-enforcement or governmental agency and in the public interest.
Minutes of the Grand Jury were denied to the Attorney-General of the State of New York who was investigating a murder case where the Grand Jury failed to indict. (Ward Baking Co. v. Western Union Tel. Co., 205 App. Div. 723. See, also, People v. Purvis, 41 Misc 2d 787 and People v. Ewald, 144 Misc. 657; Matter of King, 18 Misc 2d 881; Matter of Third December, 1959, Grand Jury, 20 Misc 2d 475.)
Against the public interest (which the court does not find herein in a legal sense) must be counterbalanced the rights of the various witnesses to have their testimony remain confidential to the Grand Jury. No witness is prohibited from repeating his testimony, or part of it, or amplifying it to anyone or *985 everyone, subject of course to the possible penalties of libel, slander or other legal lawsuit. (People v. Minet, 296 N. Y. 315.) But one of the main purposes of the rule of secrecy of the testimony before the Grand Jury as discussed above is to aid, guard and protect the witnesses. The Grand Jury is given the power to order a witness to testify whether he be willing or not, and since it is in the public interest to have loquacious and co-operative witnesses before it, the witness in return is protected from slander suits, enraged wives, husbands, neighbors and social ostracism.
“ The policy of the law, long established, is to surround proceedings of the Grand Jury with a cloak of secrecy. This must be so not only to prevent revealing the prosecution’s testimony but also to afford protection to the witnesses appearing before the Grand Jury.” (People v. Banks, 27 Misc 2d 557.)
“ The cloak of secrecy surrounding the proceedings of a Grand Jury has always been preserved and protected by the courts, with few exceptions. Such a policy is founded upon the principle that the true and proper administration [sic] justice is dependent upon the voluntary appearance of witnesses before the Grand Jury, without fear of recrimination, publicity or accountability.” (People ex rel. Sawpit Gymnasium, 60 N. Y. S. 2d 593, 594.)
In Matter of Special Report of Grand Jury of Erie County (192 Misc. 857), a request for the minutes of one Hagen’s testimony was made by the State Motor Vehicle Bureau after the Grand Jury called certain practices of car dealers into question. The court denied the request, stating at page 859:
“In determining whether the court in the present instance exercise its discretion in favor of the Commissioner of Motor Vehicles and make available to the commissioner and to the Bureau of Motor Vehicles the Grand Jury testimony of Richard Hagen, the underlying rule of secrecy of proceedings of a Grand Jury and the secrecy thereof must be examined. Secrecy is certainly necessary in order to encourage grand jurors to faithfully and fearlessly perform their duties. This cloak of secrecy tends to loosen the tongues of reluctant witnesses to testify before the Grand Jury where without it they might hesitate to do so and to further extend the exceptions to this rule of secrecy might hamper the wheels of criminal justice.
“ The facts in this very case present a glowing example of this hesitancy on the part of a witness to testify. Bichard Hagen testified before the Grand Jury and told his story, but he refuses to testify in the present Motor Vehicle Bureau hearing where there is no secrecy rule. To disclose his testimony, *986 especially without his being a party to this proceeding or being represented in any manner, might cause Hagen, as well as other future witnesses to be reluctant to testify freely before a grand jury in the future.”
“ The reasons for keeping grand jury minutes secret are too well understood to require stating. The courts should not lightly do anything which will take away the protection thrown around a witness before a grand jury. All persons should be encouraged to appear freely before grand juries and offer their testimony, with assurance that it will not lightly be made public.” (Mann v. Delaware, Lackawanna & Western R. R. Co., 99 Misc. 358, 360, affd. 177 App. Div. 952.)
The petitioner asks the court to exercise its discretion and make an exception to what he admits is the usual rule of secrecy of testimony, maintaining his application is unique, although it is not, in principle.
The courts have expressed in earlier cases their attitude toward this plea. For instance, Matter of Martin (170 Misc. 919, 922) says: “We are not unminduful that a motion to inspect under the provisions of section 952-t of the Code of Criminal Procedure is addressed to the discretion of the court and its decision is not appealable. (People v. Sweeney, 213 N. Y. 37; Matter of Montgomery [126 App. Div. 72], supra.) Before the court can, however, exercise its discretion, there must be a substantial basis shown by the defendant for the court to allow the inspection. (People v. Muhlstein, 153 N. Y. S. 909; Mann v. Delaware, L. & W. R. R. Co., supra.) Judicial discretion is not a mere arbitrary rule which confers upon a judge the right to blindly make a judicial determination nor is it a palliation for capricious discrimination. It is, in a measure, regulated by precedent and hence, while the provisions of section 952-t of the Code of Criminal Procedure are not mandatory, we may not indiscriminately permit any private litigant to inspect grand jury minutes without frustrating the very purpose for which the statute was enacted. Sound discretion impels that we regard the policy which the courts have generally adopted when applying this statute and in the light of the authorities we see no reason to except the present application from the well-established practice.”
With respect to granting an exception to the established rule, this court can add nothing to the language found in Matter of Bar Assn. of Erie County (182 Misc. 529, 534-536):
“ If precedent is to be established hereby, it must be based in sound reasoning and in line with sound public policy and in the public interest, It should not be established in an attempt *987 to provide a remedy for an alleged current public ill. The cure may be such as to endanger the health, if not the life, of the patient. Such drastic treatment should not be prescribed, if there be other well-recognized, proven and adequate remedies.
“ The underlying and basic question before this court is simply, will the public interest be better served by establishing a precedent herein and permitting the petitioner, a membership corporation with no vestment of public authority and with no powers of law enforcement, to inspect the minutes of this Grand Jury, as requested, or will the public interest be best served by denying this motion and thus, for the time at least, prevent further inroads into the historic privacy of the proceedings of a grand jury?
‘ ‘ If the court establishes the precedent sought by the petitioner, can it at some later date deny a similar motion made by other membership corporations, many of whose purposes are no less lofty or idealistic, as concerns public interest, than those of the petitioner? A desire ‘ to promote reforms in the law and to facilitate the administration of justice ’ is not a virtue peculiar to ourselves as lawyers, but is common to all persons, corporate as well as individual, who strive for betterment of government and freedom of individuals. To mention but a few types of these organizations brings many others to mind; for example, organizations dedicated to civic improvement, social welfare, educational advancement, labor, veterans’ welfare, or such groups as parent-teacher s’ and taxpayers associations, past grand-jurors’ associations, judges’ and police executives’ associations. A court in exercising its sound discretion may be persuaded by such a precedent to grant motions made by all persons or groups similarly situated as this petitioner, and thereby greatly reduce and endanger the privacy of the proceedings of a grand jury, and in particular when that grand jury is engaged in an investigation into the official conduct of public officers.
‘ ‘ As against the granting of this motion is the historic privacy of the grand jury proceedings. For hundreds of years this greatest single instrumentality of human freedom and liberty known to our form of government has enjoyed the guarantee of immunity from accountability, recrimination and persecution by those against whom accusations were made. This immunity has been enjoyed because of the historic secrecy surrounding the proceedings of the grand jury. In this State this secrecy is established by statute and penalties may be imposed upon one violating that statute. Without this guarantee a witness may well hestitate to testify against one in an official or exalted position, and a talesman may fail in his sworn duty and the *988 public interest would suffer thereby. It matters not that the January, 1944,. Erie County Grand Jury has finished its work and been discharged. What does matter is that hundreds of grand juries are to follow this Grand Jury. The work of these juries must not be impaired. They must be free to protect the innocent and accuse the guilty, irrespective of station in life or position in the community. They must not be deterred in their function through fear that the recorded minutes of their proceedings might be scrutinized by others than those now determined by the courts of this State as being proper persons to examine the minutes of grand juries. These juries to follow should be assisted in their work by willing witnesses, secure in the feeling that their testimony is private but for the already established exceptions, which exceptions are based upon a proper regard for the public interest. That this be so is to the public interest, not only for today, but for tomorrow and for so long as the institution of government of free men shall endure.”
Finally, petitioner urges the court to read the testimony before ruling upon the motion. The court has declined to do so because the point of issue is whether the testimony should be released or not regardless of its nature, agreeing with the court again in Matter of Bar Assn. of Erie County (182 Misc. 529, 536-537): ‘1 This court has properly refrained from examining the minutes of the Grand Jury in order that it might arrive at its decision solely upon its determination of the law. It shall continue to do so irrespective of the suggestion made by the petitioner that the court examine the minutes in the course of deciding this motion
In summary, because the petitioner is not a defendant, nor a law-enforcing official, nor a governmental official, and has no standing to bring this motion, and has shown no compelling reason for the court to establish a dangerous precedent, and because this court can find no case law supporting his legal contentions, and because the granting of such a motion would be adverse to the public interest in retaining the historical secrecy of the Grand Jury, the motion is denied.