Chief Judge Fuld.
Seven defendants were adjudged guilty of crimes of conspiracy and bribery following a jury trial and, on appeal, the Appellate Division reversed and ordered a new *342 trial (33 A D 2d 67), holding that the affidavit, relied on by the District Attorney to procure search warrants, was insufficient. The People took an appeal to our court, following a grant of leave but, before that appeal was perfected, the Appellate Division, upon the District Attorney’s application, granted a reargument with respect to the defendant Wheatman (33 A D 2d 1107). Upon the reargument, the court reversed itself and affirmed that defendant’s conviction on the ground that he lacked standing to challenge the validity of the warrants or the lawfulness of the subsequent search and seizure (34 A D 2d 3). Thus, we have before us an appeal by the People as to six of the defendants and an appeal by the seventh defendant, Wheatman. Since the People’s appeal poses the central issue to be decided— namely, the sufficiency of the District Attorney’s affidavit and the admissibility of documents introduced into evidence—we consider that appeal first.[1]
The People’s Appeal
In 1965, the District Attorney of New York County undertook an investigation of an alleged bid-rigging conspiracy to prevent competitive bidding on publicly advertised contracts for painting at city housing projects. Involved, among others, were three painting contractor firms, an individual representative from each of them and Wheatman, who was an official of the New York City Housing Authority. In brief, the People claim that the painting contractors, acting together and in concert, reached a decision in each instance as to who would win the various advertised contracts as well as the prices to be bid. To succeed in their scheme, they required inside information concerning Housing Authority estimates for bidding, and this, it was asserted, they obtained, for a price, from Wheatman and other officials who headed the Authority’s paint sections.
During the course of the ensuing Grand Jury investigation, the Assistant District Attorney who was in charge of the inquiry, Mr. Joseph A. Phillips, applied to Supreme Court Justice Pine for the issuance of warrants to search the offices of the three corporate defendants and eleven other contracting companies. *343 He submitted in support of Ms application only Ms own affidavit, based in all important respects, according to Mm, upon testimony given before the Grand Jury. As indicated, it is the adequacy of this affidavit which is here in issue.
Mr. PMllips first stated what he personally knew about the contractors—that is, that they had been doing business with the Housing Authority for a period of years and that the Authority had their addresses on file. He then went on to aver that he ‘ ‘ has heard the sworn testimony of a number of witnesses before the * * * Grand Jury who have stated that they were parties to an agreement to rig bids at the City Housing Authority ” and that such sworn testimony “ further reveals that each of the * * * contracting firms [listed in the' affidavit] has been identified as a party to the agreement to rig bids ’ ’.
Phillips followed this with a summary of the testimony given by the witnesses which described the operation of the conspiracy: that Housing Authority employees prepared “ estimates of the man-days” required on certain projects; that such estimates were solely for the internal use of the Authority; that the parties to the bid-rigging agreement obtained those estimates and ‘ ‘ utilized the information ’ ’ contained in them ‘ ‘ to submit false bids ”; that Jerry Jerome, president of Jered Contracting Corp., was the person who obtained the estimate information and then passed copies of it on to the other parties to the agreement. Mr. PMllips concluded with the statement that, ‘ ‘ based upon the foregoing reliable information and upon my personal knowledge there is probable cause to believe that the estimate information has been wrongfully obtained from the Housing Authority, that it has been utilized by the parties to the agreement to submit false bids to the Housing Authority and that copies of the estimate information may be found in the files of each of the parties to the corrupt agreement at the addresses set forth [in the affidavit].”
On the strength of this affidavit, Judge Fine issued the warrants in question. They authorized the police to search the offices of the companies listed and to seize certain “ handwritten and typewritten copies of New York City Housing Authority painting estimate forms ’ ’. The search wMch followed turned up a number of forms, and the defendants, prior to trial, moved *344 to suppress this evidence. The motion was denied on the ground that the affidavit ‘ ‘ spelled out in detail the circumstances from which a ‘ neutral and detached magistrate could independently determine that probable cause existed for the warrant to issue.’ ” Upon the trial, those forms were offered and received in evidence on the People’s case to corroborate the testimony given by the witnesses who acknowledged being parties to the bid-rigging agreement. Although the jury found the defendants guilty, a sharply divided Appellate Division reversed the judgments of conviction and ordered a new trial (33 A D 2d 67). It was the view of the majority that Phillips’ affidavit failed to inform the judge who issued the warrant “ of the underlying circumstances which support the conclusion and belief of the affiant that his informant was credible and his information reliable (People v. Hendricks, 25 N Y 2d [129], at p. 139) ” (33 A D 2d, at p. 69). It was the view of the two dissenting justices that ‘ ‘ the search warrant in this case conforms not only to the general principles applicable to all search warrants but more particularly to the test set forth in Hendricks ’ ’ (33 A D 2d, at p. 73).
We agree with Appellate Division dissenters that Phillips’ affidavit was sufficient to establish probable cause and that, consequently, the warrants were valid, the search lawful and the evidence seized admissible. More specifically, the affidavit satisfied the test formulated by the Supreme Court (see United States v. Harris, 403 U. S. 573; Whiteley v. Warden, 401 U. S. 560; Spinelli v. United States, 393 U. S. 410; Aguilar v. Texas, 378 U. S. 108) and, of course, by our court. (See People v. Bumper, 28 N Y 2d 296; People v. Hendricks, 25 N Y 2d 129.) It is settled, as those cases indicate, that, where the affidavit is based upon hearsay and not solely on the personal knowledge of the affiant, it must, in order to satisfy the law’s requirements, set forth facts which will enable a magistrate to judge for himself (1) the reliability (or credibility) of the informant and (2) the reliability of his information. Only then can a reviewing court be satisfied that the magistrate has discharged his “ constitutional duty” of reaching a neutral and independent determination that probable cause exists (Spinelli v. United States, 393 U. S. 410, 415, supra), instead of serving merely as “a rubber stamp” for police or prosecution. (Aguilar v. Texas, 378 U. S. 108, 111, supra.)
*345 Since the Appellate Division declared that the affidavit submitted by the District Attorney ‘ ‘ fails to meet the two-pronged test ” (33 A D 2d, at p. 69), laid down in the decisions referred to, we treat, first, the question of the reliability of the so-called informants — the witnesses before the Grand Jury-—whose “information”—testimony in this case — Mr. Phillips relied upon and, second, the question whether “ the informant[s] had gained [their] information in a reliable way.” (Spinelli v. United States, 393 U. S., at p. 417.)
Although the informant’s reliability is frequently established by a statement from the affiant that the informant is known to him and has in the past furnished information leading to the arrest and conviction of others or by a separate objective checking of the informant’s story (see People v. Hendricks, 25 N Y 2d 129, 133-134, supra), there are, of course, other circumstances demonstrating his probable reliability. For instance, our court, as well as others, have noted that a magistrate may rely upon the fact that the information was given under oath, that the statements were against the informant’s penal interest and that two or more informants tended to confirm the information which each gave. (See People v. Montague, 19 N Y 2d 121, 125; United States v. Harris, 403 U. S. 573, 583-584, supra; Spinelli v. United States, 393 U. S. 410, 423, supra [per White, J., concurring] ; People v. Fein, 4 Cal. 3d 747, 753; Skelton v. Superior Ct., 1 Cal. 3d 144, 151, 153; People v. Sheridan, 2 Cal. App. 3d 483, 488; People v. Clark, 488 P. 2d 565 [Col.].)
In the present case, not only did the informants furnish their information under oath before a Grand Jury but each testified against his penal interest as well — that is, each admitted that he was a party to a bid-rigging agreement — and at least two informants substantiated each other’s testimony. (See, e.g., People v. Fein, 4 Cal. 3d 747, 753, supra; People v. Clark, 488 P. 2d 565 [Col.], supra.)
This brings us to a discussion of the reliability of the information— the second “prong” of the test — and actually the crux of the controversy in the case before us. To satisfy this requirement, there must be sufficient information before the magistrate to enable him to deduce that the informant gained his information in a reliable manner, that is, that his conclusion that a crime has been committed rests on “ something more sub *346 stantial than a casual rumor circulating in the underworld * * * [or] * * * an offhand remark heard at a neighborhood bar. ’ ’ (Spinelli v. United States, 393 U. S. 410, 416-417, supra.) Here, the magistrate’s finding of reliability depended not upon rumor but upon a sworn summary of testimony, from grand jury witnesses who had firsthand knowledge of the matters involved — a circumstance regarded as significant. (See, e.g., People v. Hendricks, 25 N Y 2d 129, 134, supra; Spinelli v. United States, 393 U. S. 410, 416, supra; People v. Hunger, 24 N Y 2d 445, 451; People v. Montague, 19 N Y 2d 121, 125, supra.)
The firsthand character of the informants’ information is evi- ■ dent from the recital in the affidavit that a number of Grand Jury witnesses testified that “ they were parties to an agreement to rig bids that the companies named in the affidavit, including the corporate defendants, were also “ part[ies] to the agreement and that one of the defendants, Jerry Jerome, was the conspirator who obtained from the Housing Authority the bid estimate information necessary in the preparation of the rigged bids and that it was he who passed it on to the other parties to the conspiracy. (See People v. Munger, 24 N Y 2d 445, 451, supra; People v. Montague, 19 N Y 2d 121, 125, supra; see, also, Spinelli v. United States, 393 U. S., at p. 425 [per White, J., concurring].)
The .defendants contend, however, that the affidavit is defective in that it fails to furnish the requisite ‘ ‘ substantial basis ’ ’ —demanded by the cases (see Jones v. United States, 362 U. S. 257, 271; see, also, Aguilar v. Texas, 378 U. S. 108, 114, supra) — for concluding that the material sought, i.e., the bid estimate forms, would “ probably ” be found in the offices of the contractor firms named in the affidavit. The argument is without merit. Since the bid estimate information was essential to the preparation of the false bids and the carrying on of the conspiracy, it was entirely reasonable to deduce that the forms would be in the offices of the conspirators.
We would but add that the defendants were not entitled to the names of the witnesses before the grand jury, since that body was still carrying on its investigation and had not as yet returned any indictments. In such a case, it was particularly important — as this court had occasion to point out in a somewhat different context (see People v. Di Napoli, 27 N Y 2d 229, *347 235) —that the identity of the witnesses be not revealed in order (1) to protect them “ from interference from those under investigation ”, (2) to prevent “ subornation of perjury and tampering with prospective [trial] witnesses” and (3) to assure “ prospective witnesses [before the Grand Jury] that their testimony will be kept secret ’ ’ to induce them to testify freely. (See, also, People v. “Doe ”, 47 Misc 2d 975, 977-979, affd. 24 A D 2d 843; People v. Banks, 27 Misc 2d 557; 8 Wigmore, Evidence [McNaughton Rev., 1961], §§ 2360-2362.)
In short, then, the affidavit in support of the application for the search warrants was sufficient to establish probable cause. Accordingly, the order appealed from by the People should be reversed and the case remitted to the Appellate Division so that it may pass upon the facts and the contentions advanced by the defendants for reversal. (Code Crim. Pro., § 543-b [now GPL 470.40, subd. 2, par. (b)]; see People v. Phinney, 22 N Y 2d 288, 291.)
Defendant Wheatman’s Appeal
There remains for disposition the appeal taken by the defendant Wheatman. The Appellate Division, deciding on reargument that he had no standing to challenge the validity of the warrants or the lawfulness of the search and seizure, affirmed his conviction. Concluding, as we have, that the prosecutor’s affidavit is sufficient and the warrants valid, it becomes unnecessary to consider Wheatman’s standing. However, since only that question was orally argued in our court, he should, before we finally decide his appeal, be afforded an opportunity to present an oral argument on the other points contained in his brief. The determination of the appeal taken by Wheatman should, therefore, be withheld and the case set down for oral argument or submission in this court during its February, 1972 session.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Upon the appeal by the People: Order reversed and case remitted to the Appellate Division for further proceedings in accordance with the opinion herein.
Upon the appeal by defendant Wheatman: Determination of appeal withheld and case set down for oral argument or submission during the February, 1972 session of this court.

. In deciding the ease as it originally did, the Appellate Division expressly noted that it did not consider the question of the defendants’ guilt or the other points advanced by them (33 A D 2d, at p. 69).