40 N.Y.2d 183 (1976)
The People of the State of New York, Respondent,
v.
Albert Brown, Appellant.
Court of Appeals of the State of New York.
Argued April 2, 1976.
Decided June 17, 1976.
Andrew Greene and Stephan H. Peskin for appellant.
Mario Merola, District Attorney (Michael B. Himmel of counsel), for respondent.
Chief Judge BREITEL and Judges JASEN and GABRIELLI concur with Judge WACHTLER; Judges JONES and FUCHSBERG dissent and vote to reverse in separate opinions in both of which Judge COOKE concurs.
*185 WACHTLER, J.
On September 20, 1972 a police officer appeared before a Supreme Court Justice in Bronx County and applied for a warrant to search an apartment located on Jackson Avenue in The Bronx. After being sworn the officer orally presented his application to the Judge and his statements were recorded by a court reporter. In substance he stated that a registered police informant had told him that he, the informant, had seen drugs and handguns at the apartment on two occasions. According to the officer the informant saw 50 quarter ounces of heroin being cut and packaged on September 5 and again that very morning, September 20, had seen an undesignated quantity of narcotics being packaged. On both occasions the informant reported observing revolvers and on the last visit the occupant, Eddie Jackson, had offered the informant a job as a lookout during the next packaging operation, expected that evening.
The officer supplied the court with the informant's registration number, and, in addition, produced the informant who spoke to the Judge off the record. After this conversation the court stated: "I have heard the informer and after * * * hearing the officer the information tallies and I consider that he's reliable."
The warrant was issued and when executed the police seized 147 grams of cocaine, approximately 2 pounds of heroin, 2 revolvers, assorted drug paraphernalia and approximately $5,000 in cash. The defendant was one of five persons arrested at the apartment. After his motion to suppress was denied, without a hearing, he pleaded guilty to criminal possession of a dangerous drug in the fourth degree in satisfaction of an indictment charging him with illegal possession of a weapon and various narcotics offenses.
On this appeal the defendant's first argument is that the warrant application is invalid because it does not comply with CPL 690.35 (subd 1) which provides that "An application for a search warrant must be in writing and must be made, subscribed and sworn to by a public servant". In our view there *186 was substantial, if not literal, compliance with the statutory requirement. Although the application was orally presented, it was recorded and thus there is a writing, which as indicated was under oath. This, we note, is more than is required by the Fourth Amendment which simply provides that the application be "supported by Oath or affirmation".
The primary issue on the appeal is whether there was a substantial basis for the court's finding that the informer was reliable. The defendant claims that there was no such basis because the police officer never supplied the court with any information from which the court could conclude that the informer was credible. The People urge that this is unnecessary when the informer himself is presented to the court for examination.
A warrant application can, of course, be based on hearsay provided there is a "substantial basis for crediting the hearsay" (Jones v United States, 362 US 257, 269; People v Hanlon, 36 N.Y.2d 549, 556, 557). The test as later formulated by the Supreme Court involves two elements. The court "must be informed of [1] some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant * * * was `credible' or his information `reliable'" (Aguilar v Texas, 378 US 108, 114; see, also, Spinelli v United States, 393 US 410; United States v Harris, 403 US 573).
There is nothing unusual about the first requirement. It is fundamental that a warrant cannot be issued on rumor or mere suspicion (Nathanson v United States, 290 US 41). If the affidavit or deposition does not indicate how the information was acquired, by the affiant or his source, the court cannot "judge for himself the persuasiveness of the facts relied on to * * * show probable cause" (Giordenello v United States, 357 US 480, 486; Aguilar v Texas, supra, p 114). This, the Supreme Court has indicated, is the primary basis for the Aguilar holding (Aguilar, supra, p 114, n 4).
There is no doubt that this requirement is satisfied here since the officer stated that the informant had personally seen the narcotics and weapons on the premises. Obviously this information, if credible, would establish probable cause. If the officer had personally made the observations, this in itself would be sufficient to sustain the warrant. The same would be true if the application had been based on the affidavit of a *187 private citizen who had observed the property on the premises (People v Hicks, 38 N.Y.2d 90). In other words, although the court must always determine whether the information is to be credited, this is usually done without requiring a third party to submit proof vouching for the source of the information.
Nevertheless the second prong of the Aguilar test requires this additional factual allegation whenever the police rely on information supplied by "an informant, known to the police, but not identified to the magistrate" (United States v Harris, 403 US 573, 575, supra). This is an unusual requirement (see Note, 83 Harv L Rev 177, 178) but the reason for the rule is obvious. If the source of the information is not before the court, the court must rely on the police applicant to supply sufficient facts about the informant so that the court can determine whether his information should be credited.
This can be accomplished in various ways. For instance the police officer might be able to state that the informant has furnished reliable information in the past (Aguilar v Texas, 378 US 108, 114, n 5, supra), that he is a fellow law enforcement officer (United States v Ventresca, 380 US 102, 111), that the informant's statement was under oath, as before a Grand Jury (People v Wheatman, 29 N.Y.2d 337, 345; compare United States v Harris, supra, at p 575), or was obviously against penal interest (People v Wheatman, supra; see, also, United States v Harris, supra). And, of course, the police may objectively check the informer's tale (Spinelli v United States, 393 US 411, supra; see, also, People v Hanlon, 36 N.Y.2d 549, supra).
In this case, none of these methods were relied on to demonstrate the informant's credibility, and in fact, in his statement the officer did not advise the Judge why he believed the informer was reliable. However, as indicated, this requirement is simply a substitute approach to be used in those cases where the "informant is known to the police but not identified to the magistrate." It should be obvious that there is no need for the officer to speak for the informant, when the informant can speak for himself. Under these circumstances the court can determine credibility in the usual fashion without resort to substitutes.
The defendant argues that the court's examination of the informant may not be considered because it was not under oath or recorded. It is true that the informant's statements were not recorded, but it is clear enough what was said. The *188 court noted on the record that the informant's information "tallies" with that supplied by the police officer. Reading this "in a commonsense, manner" as we are bound to do (United States v Ventresca, 380 US 102, 109, supra) it is evident that the informant's statement was essentially the same as the police officer's.
And although the informant was apparently not examined under oath, we believe that there were "adequate safeguards against the rendition of false information" (People v Hicks, 38 N.Y.2d 90, 94, supra) since the informant could be prosecuted for falsely reporting an incident, if he lied (Penal Law, § 240.50). This does not mean that the warrant could issue solely on the basis of the informant's unsworn testimony because, as indicated, the finding of probable cause must be "supported by Oath or affirmation" (US Const, 4th Amdt). But when the informer's credibility alone is in issue, the court rarely resolves the question on the basis of sworn testimony from the informer. If the court can determine whether the informer is truthful on the basis of an unsworn statement against penal interest made to a police officer and relayed to the court, the Judge should certainly be able to assess his credibility when the informer has personally appeared before the court and been examined under circumstances where his statement, if false, would subject him to possible criminal sanctions.
Finally we note that the procedure which was followed here is not ideal. However the record shows a conscientious effort to comply with constitutional and statutory requirements applicable to search warrants. The circumstances are novel, perhaps unique, and thus there are no clear violations of settled principles. But even if the resolution of the case were "doubtful or marginal" we would determine it as we have in the past by relying on "the preference to be accorded to warrants" (United States v Ventresca, supra, at p 109; see, also, People v Wheatman, 29 N.Y.2d 337, supra; People v Hanlon, 36 N.Y.2d 549, 558, supra).
The order of the Appellate Division should be affirmed.
JONES, J. (dissenting).
In my view there should be a reversal. The grounds of my dissent can be briefly articulated  the proof of one essential element of probable cause was not in the form mandated by Constitution and statute.
In the establishment of probable cause for the issuance of a *189 search warrant there are requirements of two separate sorts. There are procedural requirements speaking to the manner of proof  that the supporting proof be "in writing" (CPL 690.35, subd 1) and that it be "supported by oath or affirmation" (NY Const, art I, § 12; US Const, 4th Amdt). Then, as a matter of substance, the proof in proper form, when predicated on information furnished by an undisclosed informer, must show, inter alia, (1) that the informer is reliable and (2) that the particular information imparted by him is credible (People v Hendricks, 25 N.Y.2d 129, 133).
In my view, as to manner of the proof in this case I would hold that the testimony which was given by the police officer under oath before the Supreme Court Justice and later transcribed (and thus made available to challenge by defendant and for appellate scrutiny), so far as it went, met the requirements of Constitution and statute by way of substantial if not literal compliance. The fact that some of this testimony was hearsay, of course, does not render it insufficient. The difficulty I have in sustaining this warrant stems from the fact that, accepting the police officer's testimony at face value, it contained no proof as to the reliability of the informer. The only proof touching this element is derived from a completely different source  the personal appearance of the informer. This proof was neither under oath nor was it in writing. No other instance has been invited to our attention in which the personal appearance before the issuing Magistrate has been held a sufficient predicate, in the face of constitutional and statutory mandates, for a finding of reliability of an informer whose identity is not disclosed to the defendant. In United States v Harris (403 US 573) the issue was not, as here, as to the form of the proof; all proof there was in the familiar form of the affidavit of the applying officer. The issue in Harris was whether as a matter of substantive law the fact that it was against the penal interest of the informer to have imparted the information could be accepted as an alternative ground for finding his reliability, substituting, for instance, for proof that information furnished by the informer in the past had led to convictions.
In some senses, of course, the production of the informer in person before the issuing Magistrate would appear to be a sounder basis for judging his credibility than a hearsay recital in the affidavit of the applying officer. We are accustomed to including as significant factors in the appraisal of credibility *190 the appearance and demeanor of the witness while in the process of articulating the statements the truth of which is being determined. Be that as it may, however, the Constitutions and statute require something more with respect to matters of reliability and credibility in establishing probable cause for the issuance of a search warrant. Specifically, the proof must be reducible and reduced to writing and be supported by oath or affirmation; consequently personal appearance without swearing the witness or transcribing his testimony does not meet either requirement, and if that alone is relied on to make the necessary showing of one of the elements of probable cause it is in my view insufficient. Not only is the authenticity we associate with the exaction of an oath or affirmation missing; there is also afforded no means either to defendant or to the appellate courts to re-examine written evidence on which the issuing Judge must have based her conclusion that the informer was reliable.
It is perhaps simplistic to suggest, but the inference is inescapable, that after today's decision it will be open to a prosecutor to meet the independent requirement of proof of reliability of an informer undisclosed to the defendant, by producing the informer in person, but off the record, before the issuing Magistrate, and thereby effectively foreclosing both contravention by the defendant and review by the appellate courts as to this issue. Viewed in another aspect it appears that proof of the existence of an informer may now eliminate necessity for proof under oath and in writing that he is reliable. I cannot agree to such a result.
Accordingly, I must dissent.
FUCHSBERG, J. (dissenting).
The search and seizure in this case was carried out under a warrant issued without a showing of probable cause under oath or affirmation. The gains so gotten should, therefore, have been suppressed.
For section 12 of article I of the New York State Constitution expressly provides in pertinent part that "no warrants shall issue, but upon probable cause, supported by oath or affirmation". That protective guarantee is unmistakably reiterated in the Fourth Amendment to the United States Constitution in identical language. And, consequently, the matter under oath or affirmation must set forth facts establishing probable cause (Nathanson v United States, 290 US 41, 47; *191 see, also, Jones v United States, 362 US 257; Draper v United States, 358 US 307; Comment, 28 U Chi L Rev 664).
That constitutional principle is not to be trifled with. It is grounded on overriding concern that private premises not be invaded "on the basis of information, even if it appears quite damning when simply taken at face value, unless there is corroboration of its trustworthiness" (United States v Harris, 403 US 573, 588 [HARLAN, J., dissenting]).
That that requirement was violated here is clear. Indeed, the facts are not disputed:
On September 20, 1972, Patrolman Joseph Fuller, accompanied by a registered confidential informer, appeared before a Judge to request a search warrant for a Bronx apartment. In lieu of the express statutory requirement of a written application (CPL 690.35, subd 1), Officer Fuller was permitted to testify under oath to the information supplied by his informer. According to the officer, the informer had been at the apartment on two earlier occasions when he had observed several persons engaged in the packaging of narcotics and two pistols on a table. Though present in court, the informer did not testify. The record discloses that the Judge did, however speak to him "off the record" and then stated, "I have heard the informer and after * * * hearing the officer the information tallies and I consider that he's reliable". A broad search warrant was then issued. Though Officer Fuller had not requested either nighttime or "no-knock" authorization, it allowed execution at any time of day or night, without the necessity for announcement of the authority or purpose of those who were to execute it. When, seven days later, the warrant was executed, a quantity of narcotics and two pistols were found on the premises.
With those facts in mind, we put aside for now the question as to whether in New York, in accordance with the explicit language of our CPL 690.35 (subd 1), the support for a search warrant must always be set forth in writing (cf. People v Johns, 41 AD2d 342, 344-345; United States ex rel. Gaugler v Brierley, 477 F.2d 516; United States v Hill, 500 F.2d 315). Obviously, a written record has advantages. It affords a reliable basis for expeditious review. The ready judicial accountability which it makes possible also is a strong antidote against the substitution of subjective for objective standards (cf. Frazier v Roberts, 441 F.2d 1224, 1229; Naples v Maxwell, 271 F Supp 850, revd on other grounds 393 F.2d 615). But, for the *192 purpose of our disposition here, it suffices to fall back alone on the literal constitutional requirement for an oath or affirmation and we, therefore, now turn to a consideration of what is required to be shown under such oath or affirmation in order to constitute probable cause.
For that purpose the law treats information whose source is an informer with understandable caution and, while a police officer or other affiant may, in an affidavit in support of the warrant, rely upon hearsay information obtained from an informer (Jones v United States, 362 US 257, 270, supra; People v Hendricks, 25 N.Y.2d 129, 133), the affidavit must meet the two-pronged test laid down in Aguilar v Texas (378 US 108) and Spinelli v United States (393 US 410). That test "requires that the affidavit show (1) whether the informant is in fact reliable, and (2) whether the underlying circumstances as to how the informant came by his information demonstrates sufficient probability of credibility to allow the search of the premises or person in question" (People v Hendricks, 25 N.Y.2d 129, 133, supra). "By applying this test to the application before him, a Magistrate would be assured that the source was reliable, and could judge for himself the persuasiveness of the facts relied on thereby determining the probable accuracy of the information and of the soundness of the logical deductions drawn from that information" (People v Hanlon, 36 N.Y.2d 549, 556, supra).
The second prong of the test is not challenged here because the officer spelled out that the informer "came by [the] information" which he had communicated to the police officer by direct observation, a valid basis for establishing its reliability (People v Munger, 24 N.Y.2d 445). It is the first prong, i.e., reliability of the informer, which appellant urges, soundly I suggest, has not been satisfied.
An informer's reliability can be established in several ways: The affiant may aver that the informer is reliable because he has previously supplied accurate information (People v Montague, 19 N.Y.2d 121; People v Rogers, 15 N.Y.2d 422). Or, the affiant may attest to the existence of independent objective verification of the informer's story (People v Hanlon, supra; People v Alaimo, 34 N.Y.2d 187; People v Malinsky, 15 N.Y.2d 86; People v Coffey, 12 N.Y.2d 443, cert den 376 US 916). And, of course, a sworn statement made by a known informer himself, attesting to facts which he personally observed, is not hearsay and in and of itself would support the issuance of a *193 warrant (People v Hicks, 38 N.Y.2d 90, 92, 94). Even in United States v Ventresca (380 US 102), which the majority cites as bespeaking a "commonsense" approach, it is illuminating that the warrant was issued upon a government agent's affidavit, whose facts were garnered not from an informer, but from "fellow officers * * * engaged in a common investigation" alone, including observations supporting probable cause made first hand by the affiant himself (p 111). It is to be noted that in each of these cases the assurance of reliability is embraced within the material before the Judge under oath.
In brief, in the present case, as the majority concedes, the affidavit of the officer was alone insufficient to establish probable cause and, whatever necessary supplemental testimony of his reliability the informer might have been able to supply under oath, none was provided. For not only was the interview with the informer unrecorded but, here fatally for the warrant, it was unsworn as well. Indeed, the scanty recording that the interview had taken place, if anything, suggests that, even if it had been recorded and under oath, it was barren of substance. The Judge's observation that the informer's tale "tallied" with the officer's only served to bolster the reliability of the officer; it in no way established the reliability of the informer himself. Neither an issuing Magistrate nor a police officer applicant may, consistent with the applicable constitutional protections, omnisciently pronounce an informer's reliability in the absence of supporting data any more than either may do so, to establish, to repeat the majority's quotation, "the persuasiveness of the facts relied on * * * to show probable cause" (Giordenello v United States, 357 US 480, 486; Aguilar v Texas, 378 US 108, 114, supra).
It is almost confirmatory of the strictness of the requirement for an oath or affirmation that, when a plurality of the Supreme Court essayed an exception, it did so with much division and debate and only in a case where an informer, among other things, had acted against his penal interest in admitting his own wrongdoing, a circumstance not prevailing here (United States v Harris, 403 US 573, 594, supra). To reach from there to resort to the rationale that an informer is reliable because unless his information is truthful, he might possibly be subject to prosecution for "falsely reporting an incident", would be to veer towards an undermining of the salutary requirement for an informer's corroboration altogether.
*194 Moreover, in addition to the fact that we would not be compelled to follow the Harris case as a matter of New York State law even if the factual context here had been the same as the one there (Cooper v California, 386 US 58, 62; Sibron v New York, 392 US 40, 60-61; Oregon v Hass, 420 US 714, 728), Harris provides no support for the drastic and still further departure from the language of the fundamental constitutional safeguard which confronts us here. Sound law enforcement does not require such a retreat; nor does the fact that the search here was pursuant to a warrant permitting it.
Our preference that searches be made pursuant to warrants rather than without them does not mean that the former may be made without meeting at least the minimum established requisites of probable cause.
Therefore, there should be a reversal.
Order affirmed.