OPINION OF THE COURT
Simons, J.
 Defendant has been convicted by a jury of felony murder and related crimes arising from the slaying of a storeowner during a robbery. The evidence against defendant included two inculpating postarrest statements he made which he contends were improperly received in evidence because he was arrested without probable cause and the statements were products of that unlawful arrest. The arrest was unlawful, defendant contends, because the police acted solely upon hearsay information given them by a suspect named Bolivar Abreu whose information did not satisfy the reliability requirement of the Aguilar-Spinelli rule (see, Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410). The People assert the information was reliable because it contained admissions by Abreu against his penal interest, it was corroborated by independent investigation by the police and, failing these, because the hearsay supplied probable cause under the "totality of the circumstances” standards of Illinois v Gates (462 US 213; see also, Massachusetts v Upton, 466 US 727). We find no basis for reliability under the Aguilar-Spinelli rules and we decline to apply Illinois v Gates to warrantless arrests. Inasmuch as there was no attenuation of the unlawful police conduct, the judgment must be reversed and defendant’s statements suppressed.
On March 3, 1982, Raymundo Alcantara was shot and killed during the attempted robbery of his grocery store in The *401 Bronx. Shortly thereafter, Joseph Di Prospro told officers questioning him on an unrelated charge that Bolivar Abreu was the shooter in the Alcantara homicide. This information was passed along to Detective Ernest Wieting who questioned Abreu. At first Abreu denied any knowledge of the Alcantara homicide but he subsequently implicated Di Prospro and defendant by describing a conversation he witnessed between them during which they discussed the crime. Abreu also stated that he and others traded a rifle for a .38 caliber revolver (presumably the revolver used in the crime) two months earlier and he identified other robberies committed by defendant and Di Prospro.[1] After obtaining this statement, Detective Wieting arrested defendant and Di Prospro. At the time of the arrest, defendant had not been identified through a photo array or a lineup, and no other individuals had *402 implicated him. The arrest was based solely on Abreu’s statement.
After defendant was read his Miranda rights, he. agreed to talk to the police, at first giving them various exculpating versions of his activities, but eventually confessing to the crime. He stated that during the robbery Di Prospro had pulled out a gun, that a struggle resulted when the proprietor grabbed for it and that during the struggle Di Prospro fired the gun at the proprietor. He repeated the confession in a later video tape statement.
Defendant moved to suppress his statements but the suppression court found probable cause for defendant’s arrest and denied his motion. The Appellate Division affirmed, without opinion. The legal issue before us is the minimum factual showing necessary to support a finding of probable cause (see, People v Bigelow, 66 NY2d 417 [decided herewith]; People v McRay, 51 NY2d 594, 601; cf. People v Wharton, 46 NY2d 924, 925, cert denied 444 US 880).
A police officer may arrest a person without a warrant when he has probable cause to believe that such person has committed a crime.[2] Probable cause may be supplied, in whole or part, through hearsay information (see, People v Landy, 59 NY2d 369, 375; People v Rodriguez, 52 NY2d 483, 488-489; People v Hanlon, 36 NY2d 549, 556), but before probable cause based on hearsay is found it must appear, in the language of the Aguilar-Spinelli rules, that the informant has some basis of knowledge for the information he transmitted to the police and that the information is reliable (People v Landy, supra, at p 375; People v Rodriguez, supra, at pp 488-489; People v Hanlon, supra, at p 558; cf. Illinois v Gates, 462 US 213, supra). The basis of the informant’s knowledge must be demonstrated because the information related by an informant, even a reliable one, is of little probative value if he does not have knowledge of the events he describes (People v Rodriguez, supra, at p 491). Conversely, no matter how solid his *403 basis of knowledge, the information will not support a finding of probable cause unless it is reliable. Since police officers may not arrest a person on mere suspicion or rumor, they likewise may not arrest a suspect on the basis of an informant’s tip, perhaps born of suspicion or rumor or intentional fabrication. Abreu’s statement was based upon personal knowledge and thus on this appeal we are concerned solely with his reliability.
When the courts talk about the informant’s reliability, they are usually talking about his "track record”, his past performance as a supplier of information (see, People v Rodriguez, 52 NY2d 483, supra). But other obvious forms of verification would be an oath (see, People v Wheatman, 29 NY2d 337, 345-346, cert denied sub nom. Marcus v New York, 409 US 1027, reh denied 409 US 1119) or an admission against penal interest which serves the function of an oath (see, People v Comforto, 62 NY2d 725; United States v Harris, 403 US 573). The informant’s veracity may also be established by other means showing the reliability of the information itself (see, People v Comforto, supra, at p 727; see generally, Roe, Illinois v Gates: Restructuring Hearsay Analysis in Probable Cause Determinations, 35 Syracuse L Rev 1067, 1078-1086 [1984]). In the present case, the record does not contain anything to substantiate Abreu’s past performance as an informant and his statement was not given under oath. The People urge, however, that reliability was established either by the admissions against penal interest found in his statement (see, People v Comforto, supra; People v Wheatman, supra), or by police investigation which corroborated the details of his statement (see, People v Elwell, 50 NY2d 231, 237; People v Alaimo, 34 NY2d 187).
Statements against penal interest are admissible at trial as exceptions to the hearsay rule because the declarant’s interest against being criminally implicated gives reasonable assurance of the reliability of his statement (see, People v Maerling, 46 NY2d 289, 295-298; People v Brown, 26 NY2d 88; People v Egan, 78 AD2d 34, 36-37). This general assurance of reliability also has been deemed sufficient when assessing hearsay information necessary to support probable cause determinations (see, People v Comforto, supra; United States v Harris, 403 US 573, supra; see generally, 1 LaFave, Search and Seizure § 3.3 [c]). Such admissions are not guarantees of truthfulness and they should be accepted only after careful consideration of all the relevant circumstances of the case indicates that there *404 exists a basis for finding reliability. Nevertheless, admissions against penal interest have been held sufficient to support a finding of probable cause even though the informant has little to lose and much to gain by supplying information to the police in which he incriminates himself (see, People v Comforto, supra; People v Rodriguez, 52 NY2d 483, 490, supra), or though his admissions incriminate him of criminal conduct less serious than the crime under investigation (see, People v Comforto, supra; United States v Harris, supra). They are accepted because the informant’s identity is known to the police and they may use his statement admitting criminal conduct against him if his information is false (see, 1 LaFave, Search and Seizure § 3.3 [c], at 525-534). The inculpating admissions thus serve the same purpose as a false statement under oath by placing the informant in jeopardy if he attempts to deceive or mislead the police.
In this case the People contend that Abreu’s statement contains admissions of criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]) and criminal facilitation in the fourth degree (Penal Law § 115.00 [1]). Manifestly, Abreu did not admit possession of the revolver in his statement and, to support their position, the People claim that trial evidence of possession incriminated him. That is not sufficient, however, because the trial evidence was not known to Detective Wieting at the time of defendant’s arrest and thus it could not provide him with any assurance at that time that Abreu was telling the truth. Nor do the People fare any better with their claim of facilitation. A person is guilty of criminal facilitation when, believing it probable that he is rendering aid to a person intending to commit a crime, he "engages in conduct which provides such person with means or opportunity” to commit the crime and which in fact "aids such person to commit a felony” (Penal Law § 115.00 [1]). Facilitation requires assistance to a person who intends to commit the crime at the time aid is given and who subsequently commits it (People v Gordon, 32 NY2d 62, 64-65). To establish facilitation, the People rely on Abreu’s conduct in assisting others to trade a rifle for the revolver used to kill Alcantara. That conduct occurred two months before the present crime was planned or occurred. Neither it, nor the other crimes mentioned in the statement, could support a charge of facilitation because nothing indicates that at the time Abreu and the others procured the revolver defendant and Di Prospro intended to rob Alcantara’s store or the other *405 businesses mentioned in Abreu’s statement, or that Abreu knew they intended to use the revolver for those robberies.
Nor was the information corroborated by independent police investigation. In his statement Abreu had asserted that Di Prospro told him that Di Prospro had been picked up by the police earlier but they had released him because "they didn’t have anything on him.” That was true, to the knowledge of the police, but it hardly constituted corroboration sufficient to establish the reliability of the rest of Abreu’s statement as the People contend (see, People v Wirchansky, 41 NY2d 130; and compare, People v Alaimo, 34 NY2d 187, supra).
Thus, if probable cause is to be found in this case it must be based upon the test recently announced by the Supreme Court in Illinois v Gates (462 US 213, supra).
In the Gates case, the police conducted an authorized search of defendant’s home and car which produced evidence supporting convictions on drug charges. The papers submitted to the magistrate to support the warrant application relied on a detailed anonymous letter alleging defendants were engaged in drug trafficking. That information was subsequently corroborated in part by the investigation of the police. Although the letter failed to demonstrate the informant’s basis of knowledge, the Supreme Court upheld the magistrate’s determinations of probable cause. In doing so, the court abandoned the Aguilar-Spinelli test in favor of a new "totality of the circumstances” analysis for reviewing probable cause determinations. Under the Gates rule, the familiar two-prong test no longer need be satisfied. Basis of knowledge and reliability are not essential findings in a probable cause determination but, rather, only relevant considerations. It is sufficient that the issuing magistrate makes a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity’ and 'basis of knowledge’ of persons supplying hearsay information, there is a fair probability” that the evidence sought will be located in the place in which the warrant authorizes the search. The duty of an appellate court, reviewing a magistrate’s determination, is to do no more than insure that there was a substantial basis for the magistrate’s conclusion that probable cause existed (Illinois v Gates, 462 US 213, 238, supra). Thus, under the Gates formulation, not only is the legal conclusion of probable cause to be made in a "practical, common-sense” way but also a *406 subjective standard of trustworthiness is to be used, free of fixed rules, to determine the factual predicate on which the magistrate’s legal conclusion rests.
Gates involved a search warrant and the court’s reasoning relies heavily on the fact that the determination of probable cause was made by a detached and neutral magistrate. Thus, a large part of the court’s justification for adopting the new rule rests upon its view that, in assessing probable cause, the appellate courts prefer determinations made by a magistrate issuing a warrant over those based upon the "hurried judgment” of law enforcement officers engaged in investigating crime (Illinois v Gates, 462 US 213, 235-236, supra), a preference this court has also expressed (see, People v Elwell, 50 NY2d 231, 241-242, supra; People v Hanlon, 36 NY2d 549, 558-559, supra). The importance of that consideration was emphasized by the language of' the Supreme Court opinion which reaffirmed prior decisions stating that the use of warrants should be encouraged, by several statements that reviewing courts should accord great deference to the magistrate’s determination of probable cause (462 US 213, 230-232, 239, supra), and by references to the protections afforded by limitations on a magistrate’s power to approve a warrant (id., at p 239). Noting that warrant applications are commonly drafted by nonlawyers who should not be hobbled by technical rules (id., at p 236), the court stated that applications are to be interpreted in a commonsense, not a hypertechnical manner. Finally, the court noted that warrants were to be encouraged because the use of search warrants greatly reduces the perception of unlawful or intrusive police conduct by insuring the person whose property is being searched or seized of the lawful authority of the executing officer and the limits of his power (id., at p 236).
These several arguments suggest that the Supreme Court may not apply the rule to situations involving warrant-less arrests and searches and, as a matter of State constitutional law, we decline to so apply it. In so holding, we note that this court has repeatedly stated that the proscription against unlawful searches and seizures contained in NY Constitution, article I, § 12 conforms with that found in the 4th Amendment, and that this identity of language supports a policy of uniformity between State and Federal courts. Thus, in the past, we have chosen to fashion our rules to promote consistency in the interpretation we have given to the two clauses (see, e.g., People v Gonzalez, 62 NY2d 386, 389-390;
*407 People v Ponder, 54 NY2d 160, 165; People v Roman, 53 NY2d 39, 41-42). The practical considerations upon which uniformity rests must yield, however, to a predictable, structured analysis of the quality of evidence necessary to support intrusive searches and seizures. Certainly, when the Supreme Court has not addressed a specific issue or provided guidance for such an analysis in its 4th Amendment rulings, we may, as we have in the past, choose to judge the lawfulness of the police conduct by the standards of our State Constitution (see, e.g., People v Gokey, 60 NY2d 309; People v Elwell, supra; People v Belton, 55 NY2d 49). This appeal presents one of those situations in which we believe that the aims of predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens are best promoted by applying State constitutional standards. In doing so we also provide "bright line” guidance to police personnel in performing their duties (see, People v Belton, 55 NY2d 49, 55, supra).
As a result of defendant’s illegal arrest, the prosecution obtained two statements from him which were introduced at trial; the first, a written statement made about an hour and a half after his arrest and the second, a video taped statement made four and a half hours after arrest. The burden rested upon the People to demonstrate that the statements were not acquired by exploitation of the arrest but by means sufficiently distinguishable from it to be purged of illegality (see generally, People v Martinez, 37 NY2d 662). The relevant considerations for determining that were whether some intervening event broke the causal connection between defendant’s arrest and the making of the statements, specifically "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances * * * and, particularly, the purpose and flagrancy of the official misconduct” (Brown v Illinois, 422 US 590, 603-604; see also, Dunaway v New York, 442 US 200; Taylor v Alabama, 457 US 687).
This case is virtually identical to Dunaway and Taylor. In Dunaway, the defendant made a statement within an hour of his arrival at the police station and in Taylor, defendant made a statement six hours after his arrest. There were no intervening events in either case to break the causal connection between the arrests and the statements. In this case, the elapsed time was one and one-half and four and one-half hours between arrest and statement. The People do not contend that anything happened to attenuate the taint of the *408 illegal arrest; rather, they base their entire case on the claim that the arrest was legal. We hold otherwise.
Accordingly, the order should be reversed, motion to suppress granted and the case remitted to Supreme Court, Bronx County, for further proceedings on the indictment.[3]

. The statement in full was as follows:
"On Wednesday March 3, 1982, about 2 p.m. I was in my girls’ apartment 1492 Watson 6J. Also in the apartment was Smokey (Melvin Johnson) and Joseph Di Prospro. He (Joseph) asked me if I wanted to go in with him and Smokey in a robbery. At first 1 agreed but at 4:30 to 5 p.m. they left the apartment and locked me in the apartment. Myself and Gina stayed in the apartment.
"We stayed there and between 6 p.m. to 6:30 both Joseph and Smokey came in. At first Joseph came in smiling he went into the kitchen he had a black 38 cal. larger than a police service revolver. The gun had a bridge it had a brown plastic handle Beige colored tape on it — it was made in Germany on the side it had the initials 'BU’ scratched into it. About 2 months ago we traded a dude a rifle for the gun. He emptied the shells on the floor all the six shells were spent.
"He said numerous times that he had killed this nigger. I asked him what happened, Smokey then said, they went into a store and Joey had the gun he cocked it back and said this is a stick-up. The man had his hands in his pants pockets. Joey told him to take his hands out of his pockets. Then the man took his hands out of his pockets and grabbed the gun. The man went back and came back at him and Joey fired again and again four times in a row. Joey saw him reaching for something and Joey told Smokey to run. Smokey ran out and the man chased them out of the store. Joey fired once more and then the man started shooting and Joey fired once more. Smokey said he ran to Boynton to Watson and then to Whalen and Watson. Joey started saying that ain’t the first person I shot. It was bothering him he repeated the story like Smokey said. Joey said he ran to Ward to Watson to Whalen. He came straight up to the house. Joey said to me late that night that the cops picked him up but let him go because they didn’t have anything on him. He told me this when he came to my house he said he threw the gun down the sewer.

"They also hit the bakery on Westchester. A grocery store on Evergreen and Westchester, the Spanish Restaurant. The bakery on 1 and Croes.

"Smokey threw the empty shells out the kitchen window.” (Emphasis added.)

. The statute uses the words "reasonable cause” (see, CPL 140.10). There is at least a technical distinction in the necessary quantum of underlying evidence between an arrest made with reasonable cause (which is usually equated with probable cause) to believe that defendant has committed a crime and a search based upon probable cause to believe that contraband will be found in a certain place (see, People v Lombardi, 18 AD2d 177, 180, affd 13 NY2d 1014; and see generally, 1 LaFave, Search and Seizure § 3.1 et seq. [1978]). For purposes of this appeal, however, the inquiry is the same because both deal with probable cause.

. Insofar as the concurring judges contend that exclusion is a common-law rule rather than a constitutional doctrine under New York law, we would but add that, notwithstanding the history they recite, the court has excluded evidence on State constitutional grounds in the past (see, e.g., People v Class, 63 NY2d 491; People v Gokey, 60 NY2d 309; People v Elwell, 50 NY2d 231). Indeed, one of the concurring judges, contrary to the position he now advances, has previously voted to suppress evidence admissible under the 4th Amendment on State constitutional grounds (see, People v Gokey, supra).