■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RICHARD W. GASPAR, PAULA GUTOWSKI, GARY KNOWLE and ENZO VOLPE, JR., Respondents. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v VINCENT CIFFA, CARLA PATTI, CHARLES DIDIO and ROBERT L. JONES, Respondents. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JEFFREY WEISBERG, GREGORY BRETON and GARY PLAZA, Respondents. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v KEVIN FORNESS, VINCENT CIFFA, CARLA PATTI and CHARLES DIDIO, Respondents.—Order unanimously reversed on the law, motion denied and indictment reinstated. Memorandum: Defendants were indicted for possession and sale of a controlled substance in the first and second degrees and conspiracy in the second degree as a result of evidence obtained from eavesdropping warrants issued on the strength of information

contained in the affidavit of Assistant Deputy Attorney-General Karel Keuker. In response to an attack on the validity of that information, a *Franks* hearing was held *(Franks v Delaware,* 438 US 154). Evidence at the hearing established that some of the information in the affidavit had been supplied by Patrick Ford, an informant, and that he had subsequently recanted a substantial portion of that information. The hearing court determined that Keuker, by omitting Ford's recantation from the affidavit, had misled the issuing Magistrate and shown a "reckless disregard for the truth" *(Franks v Delaware, supra; United States v Lueth,* 807 F2d 719, 725-727; *United States v Tufaro,* 593 F Supp 476, 485-488, *affd* 762 F2d 991, *cert denied* 474 US 826). Without indicating the facts on which it relied, the hearing court concluded that the warrant was not supported by probable cause and suppressed all of the evidence gathered as a result of that and ensuing eavesdropping warrants. We find that the court erred both in failing to state the basis for its determination (CPL 710.60 [4], [6]) and in reaching its ultimate conclusion. Employing our fact-finding authority (CPL 470.15) and upon our review of the record, we find that the credible facts are sufficient to establish probable cause and that the court erred in granting the suppression motions.

The evidence at the *Franks* hearing established that between January and March 1984, Ford had on three occasions sold cocaine to an undercover officer, Investigator Domres. In March 1984 Domres negotiated with Ford to purchase an ounce of cocaine. At a meeting on March 9 at Ford's apartment where the terms of the transaction with Ford were finalized, Domres met Philip DiGesare, also known as Kahuna. On March 12, Kahuna, an employee of Ford, delivered the ounce to Domres in the parking lot of Madigan's, Ford's restaurant. On May 4 Ford was confronted by Keuker with the possibility of being charged with an A-II felony and agreed to cooperate. On that date Ford stated that his primary source of cocaine was Jeffrey M. Weisberg, that he had known Weisberg for 12 years and had stopped at his antique business at 344 Connecticut Street in Buffalo on several occasions to purchase cocaine. He recited from memory Weisberg's telephone numbers and indicated that he had seen Weisberg operating a car with the license plate, "Snowflake". The information regarding Weisberg's business, phone numbers and association with an individual owning a car licensed "Snowflake" was verified by other information gathered by law enforcement agents. On May 8 and 11, 1984, Ford re-

canted, stating that he had never bought from Weisberg and that he was not involved in the sale to Domres, but rather that Kahuna had sold it. He did state that he got his "stuff" from Weisberg, but that it was Kahuna who would run in and get it. Kahuna's main source, Ford stated, was Weisberg. Following Ford's statement a review of Weisberg's telephone records disclosed that between January and July 1984, there were 1,100 toll calls with 70% of them being to or from individuals with a history of cocaine trafficking. Those records revealed a significant number of calls between Weisberg and Madigan's through April 1984, but none after May 4.

The test of determining the validity of the warrant in these circumstances is whether the application, when supplemented by the omitted information, nevertheless establishes probable cause *(United States v Lueth, supra)*. We conclude that, evaluating the contradictory statements, and in light of the other information in the affidavit, there was probable cause to believe that the law was being violated on Weisberg's premises. Ford's May 4 statement, even in light of his subsequent recantation, was sufficient to establish probable cause. In Ford's initial statement he admitted that he sold an ounce to Domres and that Weisberg was his supplier. Those admissions were against his penal interest *(see, United States v Harris,* 403 US 573; *People v Johnson,* 66 NY2d 398, 403) and therefore more reliable than the subsequent statements in which he sought to minimize his culpability *(see, United States v Shakur,* 560 F Supp 318, 332, *affd sub nom. United States v Ferguson,* 758 F2d 843, *cert denied* 474 US 1032). Further, he initially admitted buying directly from Weisberg and provided verified details concerning his business, telephone numbers and car. His later statements, although denying that he bought directly, nevertheless indicated that Weisberg was the source but that Kahuna would go in to get the "stuff". That information, coupled with the records of Weisberg's toll calls to and from Madigan's and to individuals known for their drug trafficking, provides an adequate showing of probable cause to support the warrant *(United States v Lueth, supra; People v Baris,* 116 AD2d 174, 185-186, *lv denied* 67 NY2d 1050).

As we have concluded that probable cause existed to sustain the warrant, we do not reach the question of whether defendants had standing to object to the material obtained through the wiretap. (Appeal from order of Supreme Court, Erie County, Kasler, J.—suppression of evidence.) Present—Denman, J. P., Boomer, Balio, Lawton and Davis, JJ.