OPINION OF THE COURT
Sherwood L. Bestry, J.
On September 12, 1992, shortly before 3:50 a.m., New York *731 State Trooper Nelson Baker was traveling northbound on Transit Road (Route 78) in the Town of Clarence.
The centerline of Transit Road divides the Town of Clarence on the east from the Town of Amherst on the west.
He observed a 1987 Buick pull out of a driveway on the Amherst side of Transit Road and make a left turn going northbound. The Buick straddled the centerline for a distance of about 100 yards.
At the intersection of Smith Road, the Buick made a left turn, without signaling. It then traveled erratically, increasing its speed. Smith Road is a two-lane Town of Amherst road, posted at 35 miles per hour. The Buick increased its speed to about 50 miles per hour, passing "a little white auto”.
The officer then turned on his overhead lights but the Buick accelerated to a speed in excess of 90 miles per hour and moved from side to side, sometimes driving in the eastbound lane — sometimes in the westbound lane. At each curve it was in the eastbound or wrong lane.
At the intersection of Smith Road and Millersport Highway, the Buick failed to stop for a stop sign.
It continued on Smith until it made a left into a driveway where the garage door went up electronically.
The Buick drove in and Trooper Baker exited the patrol car and walked into the garage just as the door was coming down. He tapped on the driver’s window and the door stopped.
The driver’s window was rolled down and the defendant was asked for his license and registration. The response was, "you’re in my garage”.
Trooper Baker smelled an alcoholic beverage and observed the defendant’s eyes to be bloodshot, watery and a little bit glassy. He also noted that the defendant’s speech was slurred.
The officer asked the defendant to exit the vehicle, which the latter did and placed his feet on the garage floor. As he stood up, he swayed from side to side.
Field sobriety tests were administered between the front of the police car and the rear of the Buick, after instructions were given for each test.
In attempting to perform the "finger-to-nose” test, the defendant swayed, and his feet moved when he closed his eyes. When he put his feet together he touched his left index finger to his upper lip instead of his nose. He touched his right index finger to the right side of his cheek and below his nose.
*732 In attempting the "heel-to-toe” test, his "arms flapped like a bird”. He missed four out of seven steps each way.
He was able to recite the alphabet but slowly.
Defendant was charged with violations of various sections of the Vehicle and Traffic Law as follows: driving while intoxicated (section 1192 [3]); speeding (section 1180 [d]); passing double yellow lines (section 1126 [a]) and failing to stop for a stop sign (section 1172 [a]). The section 1126 (a) charge was for travel on Smith Road, and no charge for such violation on Transit Road was issued.
Miranda warnings and DWI warnings were given. Defendant refused to undergo a chemical test.
The foregoing evidence was elicited at a hearing resulting from a motion to suppress evidence obtained as a result of the warrantless entry of the garage and the warrantless arrest, both allegedly having been made in violation of the defendant’s Fourth Amendment rights.
Searches and seizures inside a home without a warrant are presumptively unreasonable, absent a showing of probable cause and exigent circumstances (Payton v New York, 445 US 573).
The factual circumstances in Welsh v Wisconsin (466 US 740) and in Matter of Stark v New York State Dept. of Motor Vehicles (104 AD2d 194, affd 65 NY2d 720), with results differing from each other, are very similar to those in this case.
In Welsh (supra), the offense of driving while intoxicated was only a noncriminal violation subject to a civil forfeiture proceeding for a maximum fine of $200 as opposed to New York Vehicle and Traffic Law which classified and still classifies driving while intoxicated as a misdemeanor with a mandatory fine, and/or imprisonment up to one year.[1]
In Welsh (supra), the Supreme Court held that the circumstances were not exigent, while in Stark (supra), the Court of Appeals affirmed the Third Department which held that the circumstances were exigent.
In both cases the police officers entered the defendants’ homes without a warrant of arrest and without a search warrant.
*733 In Welsh (supra), the police officer did not see the defendant driving. Also, he did not have an opportunity to view the physical manifestations of the defendant until after entry into the defendant’s home;[2] and in this case not until after entry into the defendant’s garage. In Stark (supra), the officer observed the defendant driving, gave chase and while outside defendant’s garage observed him exit his vehicle and stagger.
Anything that Trooper Baker may have observed in the defendant’s garage while the overhead door was up and while the officer was outside would be admissible because there is no expectation of privacy from view in such a circumstance, but an "up” door on a garage used in connection with a dwelling is not an invitation to enter. The raising and lowering of the door is a necessity for garaging a vehicle and storing other personal property as well as for personal ingress or egress.
When a dwelling door opens it may be possible for one to look into the dwelling without violation of the Fourth Amendment, but certainly no one can argue that if a householder opens the outer door to his house, to enter or exit, that such opening is an abandonment of the right to be free from physical invasion into the dwelling.
We therefore rule that absent exigent circumstances Officer Baker had no right to enter the garage.
All the violations of the Vehicle and Traffic Law other than the DWI charge were of such minor import that exigent circumstances did not exist with respect to them so as to permit entry by the officer (Welsh v Wisconsin, supra).
If Trooper Baker had probable cause to believe that the defendant was intoxicated then this court is compelled to find that the circumstances were exigent as the reasons set forth in Stark (supra), and affirmed by the Court of Appeals for determining exigency are prevalent here and therefore compelling.[3]
*734 The prime distinction between the facts in Stark (supra) and in this case is that the police officer observed Stark exit his vehicle and stagger into the house, while the officer was outside.
In both Welsh and Stark (supra) the police officer was admitted into the home by a member of the defendant’s family.
The final question is, did Trooper Baker have probable cause to make an arrest for driving while intoxicated so as to justify his entry into the garage.
The egregious driving by defendant was not sufficient without more, to create probable cause for arrest for driving while intoxicated. The defendant did drive erratically, which conduct constituted Vehicle and Traffic Law infractions which permitted a "stop” of the vehicle on the public highway (People v Ingle, 36 NY2d 413). However, conduct which only constitutes traffic infractions under the Vehicle and Traffic Law does not permit a warrantless entry (Welsh v Wisconsin, supra, at 750).
Trooper Baker did not see the defendant walk or stagger prior to the officer’s entry into the garage as the police officer did in Stark (supra).
If the erratic driving by defendant was sufficient without more to create probable cause for arrest for driving while intoxicated then there would have been no necessity for Trooper Baker to have administered field sobriety tests after his entry into the garage.
Without the field sobriety tests we are left with erratic and egregious driving, the manner of the defendant’s exiting the vehicle, his bloodshot and watery eyes and the odor of an alcoholic beverage.
Other than the erratic driving all such evidence was obtained only after the physical entry into the garage by Trooper Baker.
This court holds that although the time of day, coupled with the manner of vehicular operation, and experience of the Trooper undoubtedly gave rise to suspicion of intoxication, suspicion does not reach reasonable cause.[4]
*735 Therefore, without reasonable cause to make an arrest for driving while intoxicated, Trooper Baker had no right to enter the garage, especially as the garage door was coming down.
Evidence obtained after entry into the garage must be suppressed. Furthermore, the arrest was illegal. The charges have to be dismissed.

. Prior to November 1, 1992 New York provided that the fine was to be not less than $350 and no more than $500. Since November 1, 1992 the fine must be no less than $500 and no more than $1,000.

. In Welsh (supra), the defendant drove erratically and the vehicle left the road. A witness who called the police advised them that the defendant was very inebriated or "very sick”.

. As stated herein, driving while intoxicated is a crime with a one year’s imprisonment possible; and "[h]ere the arrest was justified as a continuation of the uninterrupted pursuit of petitioner and a measure designed to prevent the destruction of evidence by timely ascertaining petitioner’s blood alcohol level (see Welsh v Wisconsin, supra, at p [753], pp 2099-2100 * * *). To ensure an accurate measurement, the chemical test for intoxification must be administered within two hours after the driver has been arrested (Vehicle and Traffic Law, § 1194, subd 1, par [1] * * *). This *734 fact, coupled with a possibility that a suspect could consume additional alcohol upon arriving at his home, makes immediate action by an arresting officer imperative” (Stark v New York State Dept. of Motor Vehicles, supra, at 197).

. "[A] police officer may arrest a person for:
*735 "(a) Any offense when he has reasonable cause to believe that such person has committed such offense in his presence; and
"(b) A crime when he has reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise” (CPL 140.10 [emphasis supplied]).
Reasonable cause is defined in CPL 70.10 and is the equivalent of the constitutional standard called probable cause (see, People v Johnson, 66 NY2d 398, 402, n 2; 1 La Fave, Search and Seizure § 3.1 [2d ed 1987]; Preiser, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 70.10).