OPINION OF THE COURT
Larry M. Himelein, J.
decision
This case raises an issue left unresolved in People v Taylor (73 NY2d 683): does the loss of the in camera testimony given in support of a search warrant application mandate suppres *156 sion of the evidence or do there exist circumstances here which permit the evidence to be received?
Defendant, charged with criminal possession of a controlled substance in the third degree, has moved to suppress the cocaine found during the execution of a search warrant at the residence of Jeffrey Johnston located at 320 North Union Street in the City of Olean on September 29, 1995. Defendant, who lives elsewhere, was in the apartment at the time the police arrived. Standing issues were resolved by this court in a decision dated July 11, 1996 which held that defendant had standing to challenge the warrant. A hearing was held on September 24, 1996, to determine whether the cocaine should be suppressed pursuant to People v Taylor (supra). The following constitutes the court’s findings of fact and conclusions of law.
FINDINGS OF FACT
Randy Langdon, a member of the Olean Police Department presently assigned to the Southern Tier Drug Task Force, was involved in a six-to-eight-month investigation of drug activity in the 300-400 block of the City of Olean during 1995. Dating back to January of that year, in response to citizen complaints concerning drug activity at Webb’s Sub Shop, officers or informants purchased crack cocaine from 18 or 20 different people. These purchases took place in front of or on the side of Webb’s or elsewhere after the sale was agreed to at Webb’s. On September 27, 1996, Langdon went to Olean City Judge William H. Mountain’s chambers in the City Court building to seek a search warrant. He brought with him a search warrant application and a tape recorder to record the in camera testimony he would give to Judge Mountain.
After turning the machine on, Langdon explained that the investigation had continued for several months in this block and officers observed people going in and out of the apartment of Jeffrey Johnston which is located over Webb’s. An informant they had used in the past and had proven reliable observed crack cocaine in the apartment. Another previously reliable informant had been in the apartment as recently as the night before and had seen the same thing. There had been several informant buys downstairs at Webb’s and the informants were individuals who had previously appeared before the Judge on other warrant applications. Langdon also told Judge Mountain that several of the sellers had been known to possess firearms.
During this investigation, the task force had set up surveillance from a storefront across the street and observed many of *157 these coining and goings. From this storefront, officers had observed that the people who sold the cocaine frequently went to Mr. Johnston’s apartment. Langdon could see these people going in and out of Johnston’s apartment through the window. Those people included Michael Foskit and Otis Parks, both of whom have served time for cocaine dealing and are known to this court. Langdon explained that no informants testified because they were all unavailable when he applied for the warrant. After the application was made and the search warrant granted, Langdon rewound the tape, put it in an envelope, and after the warrant was executed, gave the search warrant, tape and inventory to the city court clerk. In June of this year, he picked it up, still sealed, and played the tape to prepare for the hearing but the tape was blank. He then typed out his recollection of the application process and provided copies to Judge Mountain, the prosecutor and the defense.
Judge Mountain testified that Langdon normally brings a tape recorder when he applies for a search warrant. If Lang-don does not bring one, Judge Mountain takes notes. Since he took no notes here, he believed that a recorder was used. While he could not swear that a tape recorder was used, he did, however, have an independent recollection of this particular search warrant application. Drug use in and around Webb’s had inflamed the passions of many Olean residents and there had been a public clamor for the police to do something about it.
Judge Mountain swore Officer Langdon told him his agency was looking into drug trafficking at Webb’s. Webb’s was a great concern in the City of Olean and the apartment over Webb’s was also thought to be a place for the cocaine dealing. It was related to Judge Mountain that several of the task force agents as well as confidential informants had bought cocaine in Webb’s. Confidential informants had also been inside Mr. Johnston’s apartment and had seen crack cocaine on different people and in rather large quantities on the tables. A number of the people that were seen in this apartment were people from whom cocaine had been purchased. The informants that the task force used to make these purchases were reliable in that they had previously made buys, had previously given information to Judge Mountain that had been used for other search warrants, and provided information and testimony in cases that resulted in convictions. After hearing Langdon, Judge Mountain signed the warrant. Judge Mountain was unaware that the tape machine had malfunctioned. In response *158 to a question by the court, Judge Mountain indicated that there was no specific testimony as to the dates the buys had been made other than it was an ongoing investigation throughout this period and several of the informants had seen drugs in the apartment at different times.
Judge Mountain further testified on cross that none of this information came directly from Langdon but instead came from informants. Langdon himself did not see people purchase drugs, but he observed people in the apartment who had sold cocaine to the agents. On several occasions, informants told him the cocaine was spread out on the table. Judge Mountain concluded that the probable cause was the drug buys made by the agents and confidential informants at Webb’s and the fact that drugs had been seen upstairs in Johnston’s apartment by several of the informants when the individuals who had sold the cocaine were present. Judge Mountain also noted that he is in the practice of taking notes on search warrant applications if there is no tape recorder or court reporter present. The court notes that the efficacy of his notes passed appellate scrutiny on at least one occasion (see, People v Stewart, 159 AD2d 971).
In Taylor (supra), the Court of Appeals was critical of accepting the after-the-fact testimony of the officer who applied for the search warrant because he had an interest in seeing the warrant sustained. In that case, however, the issuing Magistrate had little or no recollection of the application process. Here, the Magistrate demonstrated a strong recollection of the information he had been given. The testimony of Judge Mountain and Investigator Langdon seems to this court fairly consistent; I credit both their testimony but in the event of conflict, in reliance on Taylor, the court will credit the Magistrate’s recollection.
CONCLUSIONS OF LAW
I.
Defendant contends initially that this court erred in ordering that a reconstruction be held because all parties knew, prior to the hearing, that there were no notes taken by the Magistrate, no tape recording, no informant testimony and a written application that, standing alone, did not come close to establishing probable cause for a warrant to be issued. However, in People v Taylor (73 NY2d, supra, at 690), the Court of Appeals, while suppressing the evidence because of the lack *159 of compliance with CPL 690.40 (1), noted: "We do not mean to suggest that an effort to comply substantially with the mandate of the statute, coupled with a genuinely inadvertent loss of recorded testimony, might not call for a different result, provided that there was some reliable basis for reconstructing the informants’ testimony”.
It is this court’s conclusion that a hearing was necessary to determine if there was an effort to comply with the statute and if the loss of the recorded testimony was genuinely inadvertent. If the People successfully establish both, the question then becomes whether there exists a reliable basis to reconstruct the testimony given to Judge Mountain. If the People are successful there, the issue then becomes whether probable cause existed for the issuance of the search warrant. These issues required a hearing; the court cannot accept defendant’s claim that there was absolutely no compliance with CPL 690.40 (1) without a factual predicate upon which to base such a conclusion.
II.
A.
Defendant contends that the procedure at issue here did not substantially comply with CPL 690.40 (1). However, the test is whether there was "an effort to comply substantially with * * * the statute” (People v Taylor, 73 NY2d, supra, at 690 [emphasis supplied]). This court cannot accept the contention that no such effort was made.
Defendant attempts to equate the failure of the tape recorder to a failure to make a "conscientious effort to comply” with CPL 690.40 (1). The court cannot connect those dots. In fact, there is no question but that Investigator Langdon made a conscientious effort to comply with the statute. He appeared before Judge Mountain and brought the recorder with him, a recorder he had used on numerous other occasions. He started the recorder before he provided the information and when the process was completed, sealed the tape in an envelope and filed it with the court clerk. While Langdon might be criticized for not checking the machine before he began, that oversight can hardly be equated with a less than conscientious effort to comply with the statute.
B.
Taylor (supra) instructs that, in addition to an effort to comply substantially with the statute, there must be a *160 genuinely inadvertent loss of recorded testimony before determining whether the testimony can be reconstructed in a reliable manner. There can be little doubt that the failure to record was genuinely inadvertent. Lañgdon brought to the court a recorder he had used on numerous other occasions and had never previously presented a problem. Believing that the tape had recorded the application testimony, he sealed and filed it with the city court clerk. He was completely unaware that the recorder had malfunctioned.
On this point, defendant raises several subissues: whether the Taylor language requires a successful recording and then its loss; whether "genuinely inadvertent loss” means the Magistrate must be the one who lost the recording; whether the Judge can delegate the recording process to the police; whether the Judge can permit the police to preserve the record; and whether an inadvertent loss can be by act of the police. The court finds these questions both interesting and troublesome and notes a dearth of authority on these specific points.
This court finds no meaningful distinction between successfully recording the hearing and subsequently losing the tape and the situation here where there was an apparent failure to record. While there might be a hair-splitting difference, constitutional issues should not hinge on such trifles. In fact, the situation where a tape is made and lost might be more irresponsible than an equipment malfunction.
The issues defendant raises concerning the interactive responsibilities of the Magistrate and the police are indeed troublesome. The statute recites that any in camera examination "must be either recorded or summarized on the record by the court” (CPL 690.40 [1] [emphasis supplied]). However, is it realistic to require that the Magistrate be the one who physically brings the recorder, inserts the tape and turns it on? Search warrant applications are made at all hours; is it required that every Magistrate carry a recorder at all times or is it reasonable to permit the police officer who seeks the warrant to record the in camera proceedings? Will we mandate that Judges in the local criminal courts, most of whom are nonlawyers, have tape recorders on their farms, in their classrooms, on their nightstands or at the office? It appears to this court that the taping of the in camera hearing by the applicant is clearly within the "substantial compliance” requirement, especially since the tape was filed with the clerk of the court.
*161 C.
Next, we consider whether there was a reliable basis for reconstructing the testimony presented to Judge Mountain. There is a significant difference between this case and Taylor (supra); here, the Magistrate had a clear recollection of the particular search warrant application. In Taylor, the Magistrate had little or no recollection of the application and was led through his testimony by the prosecutor.
Once Investigator Langdon realized the tape was blank, he typed out a series of notes containing his recollection of the hearing. While it is true that Judge Mountain received a copy of those notes, he also noted that he did not need them to recall this particular search warrant. Because he is from Olean, he was well aware of the public concern about drug trafficking in and around Webb’s and was encouraged to see the Task Force take some action there. He was also pleased that many of the buys were made by police officers rather than informants. His recollection of this application was clear, as was Langdon’s, and they were also consistent with each other’s.
D.
Although the People appear to this court to have negotiated these hurdles, it must be noted that the Court of Appeals has not said unequivocally that a search warrant under these circumstances will be upheld. The Court noted only that establishing the effort to substantially comply, combined with a genuinely inadvertent loss of recorded testimony and a reliable basis for reconstructing the testimony might lead to a result other than suppression (see, People v Taylor, 73 NY2d, supra, at 690).
While it is always risky to predict what an appellate court might do in any given situation, that language appears to indicate that in the appropriate factual situation, a search warrant that might otherwise be invalidated could be upheld. This court believes the facts here are very close to those apparently envisioned by the Court of Appeals in not wanting to close the door on an otherwise validly issued warrant.
Several of the questions raised by defendant cannot be answered based on the existing authority. Moreover, assuming good-faith adherence to CPL 690.40 (1), does the question of who "lost” the recording have any significance? Defendant’s contention that the Judge delegated the preservation of the record to the police is not supported by the testimony; the tape was filed with the clerk of the court that issued the warrant. *162 However, this court has some concerns about the police officer going to the court clerk to retrieve the tape and take it back to his office. Once the tape becomes a part of the court’s record, disclosure to the parties should be much more carefully controlled. However, that specific point has not been raised as a ground for suppression.
III.
A.
Defendant’s argument about the Aguilar-Spinelli test is confusing. Those cases (see, Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410) hold that when hearsay information is presented to the Magistrate, i.e., the police officer relates to the Judge what his or her informant told the officer, the officer is vouching for the reliability of the informant (People v Taylor, supra, at 688). In that situation, the officer must demonstrate to the issuing Magistrate (1) the veracity or reliability of the source of the information and (2) the basis of the informant’s knowledge (People v Griminger, 71 NY2d 635; People v Johnson, 66 NY2d 398; People v Bigelow, 66 NY2d 417). That standard continues to apply in New York despite the Supreme Court’s adoption of the "totality of the circumstances” approach (compare, People v Griminger, supra, with Illinois v Gates, 462 US 213).
However, if the informant appears personally before the issuing Magistrate and provides information, the AguilarSpinelli test does not apply (People v Bartolomeo, 53 NY2d 225; People v Taylor, supra; People v Lentz, 174 AD2d 1017). That is because the Magistrate sees the informant and can make his or her own judgment about the informant’s reliability and the veracity of the information (supra).
Defendant makes reference to a prior holding by this court that Aguilar-Spinelli did not apply to this case. I have searched the court file and find no such indication; however, I do have some recollection of making a comment along those lines. However, that may be because the court initially believed that the in camera testimony was provided by an informant rather than the officer; under those circumstances, Aguilar-Spinelli would not apply. Since it has now been shown that the information presented was hearsay, Aguilar-Spinelli clearly applies and the People must establish both prongs to sustain the warrant at issue.
*163 B.
The first prong, the basis of information test, is basically whether the informant knows what he is talking about (People v Bigelow, 66 NY2d, supra, at 423). There are two ways to verify whether an informant knows what he is talking about (supra). The most reliable is the informant’s own description of the underlying circumstances which he personally observed (supra; see also, People v Johnson, supra; People v Rodriguez, 52 NY2d 483). Here, the informants could describe the cocaine that on several occasions was spread out on a table in the apartment at the same time the individuals from whom cocaine had been purchased were present in the apartment. One of the informants had seen cocaine in the apartment as recently as the evening before the search warrant application was made. These factors alone meet this prong of the Aguilar-Spinelli test.
The other way to verify an informant’s basis of knowledge is through police investigation that corroborates the defendant’s actions or develops information that is consistent with detailed predictions by the informant (People v Bigelow, supra; People v Rodriguez, supra). Here, the Task Force had set up a surveillance from across the street. The same individuals that had sold cocaine were frequently seen in the apartment by the officers, thus, at least in part, confirming the observations made by the informants.
C.
The second prong of this test is simply whether the informant himself is reliable (People v Johnson, supra; People v Bigelow, supra). This prong can be satisfied by placing the informant under oath (People v Johnson, supra; People v Wheatman, 29 NY2d 337, cert denied sub nom. Marcus v New York, 409 US 1027) or by an admission against the informant’s penal interest, which serves the function of an oath (People v Johnson, supra; People v Comforto, 62 NY2d 725). Neither was done here.
However, an informant’s reliability can also be established by his past performance as a supplier of information (People v Rodriguez, supra; People v Johnson, supra). The informant’s reliability may also be established by other means which show the reliability of the information itself; this is usually done by police investigation which corroborates the details of the informant’s information (People v Comforto, supra; People v Johnson, supra).
*164 Here, both Judge Mountain and Investigator Langdon testified that the informants had previously provided information that led to successful search warrants, arrests and convictions. In fact, Judge Mountain recognized the names of some of the informants from previous occasions. Further, the investigation over a several-month period tended to corroborate the informant’s information concerning who was in and out of the apartment at the various times drugs were seen inside. Thus, the second prong of the Aguilar-Spinelli test was also met.
CONCLUSION
Although the court is not unmindful of the seriousness of issuing a warrant to search someone’s home and the constitutional implications in such a process, the courts have consistently expressed a strong preference for warrants (People v Wheatman, supra; People v Hanlon, 36 NY2d 549). Where a search warrant has been secured, the bona fides of the police will be presumed and a subsequent search upheld even in a marginal or doubtful case (People v Hanlon, supra; United States v Ventresca, 380 US 102).
While there are certain aspects of the search warrant application process at issue here which are less than optimum, this court, guided by People v Taylor (supra), concludes that this case provides a factual predicate for finding a genuinely inadvertent loss of the in camera testimony and a reliable basis for reconstructing the in camera testimony of Investigator Langdon. Further, there was probable cause for the issuance of the warrant and, accordingly, the motion to suppress is denied.